IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GREAT WEST CASUALTY COMPANY,       )
                                   )
            Plaintiff,             )
                                   )
     v.                            )        1:18CV1026
                                   )
PACKAGING CORPORATION OF           )
AMERICA, SALEM CARRIERS, INC.,     )
and KELLIE S. WALLACE,             )
                                   )
            Defendants.            )


## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before the court is Defendant Packaging
Corporation of America's ("PCA") Motion to Dismiss or Stay
Plaintiff's Declaratory Judgment Action. (Doc. 10.) PCA has
filed a brief in support of its motion, (Doc. 11), Plaintiff
Great West Casualty Company ("Great West") has responded in
opposition, (Doc. 16), and PCA has replied, (Doc. 18). For the
reasons set forth herein, PCA's motion will be granted in part
and denied in part.

## I.   BACKGROUND

Defendant's motion, in part, challenges the ripeness of
Plaintiff's claims and Plaintiff's standing. (See Def. Packaging
Corporation of America's Mem. of Law in Supp. of Mot. to Dismiss
or Stay ("Def.'s Br.") (Doc. 11) at 12-13.) Generally,

challenges to standing and ripeness are addressed under Rule 12(b)(1) for lack of subject matter jurisdiction. CGM, LLC v. BellSouth Telecomms., Inc., 664 F.3d 46, 52 (4th Cir. 2011) (distinguishing statutory standing from Article III and prudential standing); Maryland v. United States, 360 F. Supp. 3d 288, 305 (D. Md. 2019) ("Like standing, ripeness is an issue of subject matter jurisdiction."); see also Pitt Cty. v. Hotels.com, L.P., 553 F.3d 308, 311 (4th Cir. 2009) (noting that the district court recharacterized a defendant's challenge to standing from a motion to dismiss for failure to state a claim under Rule 12(b)(6) to a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)). When resolving a motion under Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (quoting Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991)).

Defendant has also moved to stay the case and has submitted affidavits in support. "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm

to the party against whom it is operative." <u>Williford v.</u>
<u>Armstrong World Indus., Inc.</u>, 715 F.2d 124, 127 (4th Cir. 1983).

This factual section will thus address the relevant facts
from both the Complaint and any affidavits filed.

A.    **Parties**

Plaintiff Great West is an insurance company organized
under the laws of Nebraska with its principal place of business
there as well. (Complaint for Declaratory Judgment ("Compl.")
(Doc. 1) ¶ 1). Defendant PCA is a manufacturing company
organized under the laws of Delaware with its principal place of
business in Illinois. (<u>Id.</u> ¶ 2.) Defendant Salem Carriers, Inc.,
is a transportation company organized under the laws of North
Carolina with its principal place of business there as well.
(<u>Id.</u> ¶ 3.) Defendant Kellie S. Wallace is a citizen and resident
of North Carolina who was employed by Defendant Salem Carriers
during the relevant time and remains employed by Salem Carriers.
(<u>See</u> <u>id.</u> ¶¶ 4, 51.)

B.    **The Underlying Contracts**

On or around October 4, 2009, Defendants PCA and Salem
Carriers entered into a "Transportation Agreement" whereby Salem
Carriers agreed to provide transportation services to PCA. (<u>Id.</u>
¶ 25; Ex. C (Doc. 1-3).) Great West alleges that Salem Carriers
agreed in the Transportation Agreement to "defend, indemnify,

and hold PCA harmless for liability claims arising from Salem
Carriers' performance of services for PCA." (Compl. (Doc. 1)
¶ 27.) Salem Carriers allegedly is not obligated to defend,
indemnify, or hold PCA harmless where liability results solely
from PCA's negligence. (Id. ¶ 28.) The PCA Transportation
Agreement is governed by Illinois law. (Id. ¶ 29.)

Great West insured Salem Carriers under insurance policy
no. MCP19530A for the period between October 1, 2015, and
October 1, 2016 (the "Insurance Policy"). (Id. ¶ 34.)

### C. The Underlying Lawsuit

On October 2, 2015, Defendant Wallace was injured after
opening a cargo trailer's rear door and being struck by a
pallet. (Id. ¶ 8.) Great West alleges that "PCA was responsible
for loading and in fact loaded the pallet in question into the
trailer." (Id. ¶ 10.) After settling her workers' compensation
claim before the North Carolina Industrial Commission with Salem
Carriers, Defendant Wallace filed a negligence lawsuit against
PCA in a North Carolina state court sometime between August 3,
2018, and August 13, 2018 (the "Underlying Lawsuit"). (See id.
¶¶ 13, 15; see also Ex. B (Doc. 1-2).) As a result of PCA's
relationship with Salem Carriers under the Transportation
Agreement, PCA sought coverage from Salem Carriers' insurer,
Plaintiff Great West, for PCA's defense of the Underlying

- 4 -

Lawsuit. (See id. ¶ 37.) That coverage is the subject of Great West's lawsuit here.

On November 8, 2018, Great West appears to have denied coverage to PCA in the Underlying Lawsuit. (See Declaration of Thomas Marrinson ("Marrinson Decl.") (Doc. 12), Ex. A to Marrinson Decl. at 5-10.)[1] On December 12, 2018, PCA requested, in a letter from its counsel to Great West's counsel, that Great West reconsider its coverage position. (Id. at 5.) In that letter, PCA notified Great West that, if Great West did not agree to provide PCA with defense coverage in the Underlying Lawsuit, then PCA intended to file a third-party complaint against Great West's insured, Salem Carriers, in the Underlying Lawsuit and file a declaratory judgment and breach of contract action against Great West in the United States District Court for the Northern District of Illinois. (See id. at 9.) PCA attached drafts of both complaints to its letter to Great West. (See id. at 11-25.) PCA requested that Great West respond by December 21, 2018, as to whether it would reconsider its coverage position in the Underlying Lawsuit. (Id. at 9.)

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

**D.  The Present Lawsuit**

On December 18, 2018, Great West filed a declaratory judgment action in this court under 28 U.S.C. § 2201, asking this court to declare that Great West does not afford any coverage to PCA under the Insurance Policy in connection with the Underlying Lawsuit and that Salem Carriers does not have any obligation to defend or indemnify PCA under the Transportation Agreement in connection with the Underlying Lawsuit. (Compl. (Doc. 1) ¶¶ 57-61.) Also on December 18, 2018, Great West notified PCA through a letter that it would provide for PCA's defense in the Underlying Lawsuit subject to a reservation of its rights under the Insurance Policy to later disclaim such coverage. (Ex. B to Marrinson Decl. (Doc. 12) at 28.) Great West's counsel stated in that letter that it was attaching a copy of the complaint for declaratory relief it had just filed in this court to its letter to PCA. (Id.)

**E.  PCA's Northern District of Illinois Lawsuit Against Great West**

On December 21, 2018, PCA filed its complaint for declaratory judgment, breach of contract, and extra-contractual relief in the United States District Court for the Northern District of Illinois against Great West alone (the "Illinois Lawsuit"). (See Def.'s Br. (Doc. 11) at 3; Packaging Corp. of

Am. V. Great West Cas., 1:18-CV-08400 (N.D. Ill. Dec. 21, 2018).
It appears that PCA has not filed the third-party complaint
against Salem Carriers in the Underlying Lawsuit seeking
indemnification owed under the Transportation Agreement or
contribution from Salem Carriers. (See Docket No. 18-CVS-1944,
Wallace v. Packaging Corp. of America, filed in Superior Court
in Rowan County, North Carolina.)

On February 27, 2019, Great West moved to stay the Illinois
Lawsuit in favor of its first-filed action in this court. (See
Ex. D to Marrinson Decl. (Doc. 12) at 497.) On April 8, 2019,
PCA moved to dismiss or stay this action in favor of the
Illinois Lawsuit. (Doc. 10 at 1.) PCA argues that the second-
filed Illinois Lawsuit is entitled to priority because Great
West's action here is an improper anticipatory filing; that this
action is not ripe and Great West lacks standing for certain
claims; and that this action is less comprehensive than the
Illinois Lawsuit. (Id. at 2.) On May 2, 2019, Defendant Salem
Carriers filed its Answer in this action, admitting that Great
West is providing coverage on behalf of PCA in the Underlying
Lawsuit under a reservation of rights and, therefore, that
"Salem Carriers is directly funding PCA's defense, causing Salem
Carriers to suffer ongoing financial harm." (Doc. 17 ¶ 38.)

On July 9, 2019, the district court presiding over the Illinois Lawsuit granted Great West's motion to stay that proceeding. (Notice of Ruling (Doc. 21) and Ex. A (Doc. 21-1) at 1-2.) The district judge ruled from the bench that the applicable factors weighed in favor of prioritizing the action before this court over the Illinois Lawsuit. (Notice of Ruling (Doc. 21) at 1.) The parties informed this court that the district judge will not issue a written order. (Id.)

## II.   **STANDARD OF REVIEW**

"When . . . a defendant challenges the existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence." United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009) (citation omitted). "[T]he district court may then go beyond the allegations of the complaint and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings . . . ." Id. at 348 (citation omitted). If subject matter jurisdiction is lacking, the complaint must be dismissed. Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006).

A plaintiff must "establish[] throughout all stages of litigation (1) that he is suffering an injury-in-fact or continuing collateral consequence, (2) that his injury is fairly

traceable to the challenged action or decision, and (3) that a favorable decision would be likely to redress his injury." Townes v. Jarvis, 577 F.3d 543, 554 (4th Cir. 2009) (footnote and citations omitted) (emphasis removed). "When a case or controversy ceases to exist, the litigation is moot, and the court's subject matter jurisdiction ceases to exist also." S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs, 789 F.3d 475, 482 (4th Cir. 2015) (citing Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983) (per curiam)). "A case can become moot due either to a change in the facts or a change in the law." Id. (citation omitted). Courts have held that a case is moot where a plaintiff seeks to compel adjudication of an adjustment application which is then closed. See, e.g., Gonzalez v. Mayorkas, No. 1:13-cv-1230, 2014 WL 585863, at *2, *6 (E.D. Va. Feb. 12, 2014), aff'd sub nom. Gonzalez v. Zannotti, 585 F. App'x 130 (4th Cir. 2014) (per curiam).

## III. **DISCUSSION**

The court will address Defendant's contentions in turn.

### A. **The First-Filed Rule**

Where two parties have filed similar lawsuits in different federal courts, courts in the Fourth Circuit generally follow the first-filed rule, prioritizing the first-filed suit. See, e.g., Learning Network, Inc. v. Discovery Commc'ns, Inc., No.

01-1202, 2001 WL 627618, at *3 (4th Cir. 2001); Nutrition &
Fitness, Inc. v. Blue Stuff, Inc., 264 F. Supp. 2d 357, 360
(W.D.N.C. 2003). "The decision to invoke the first-filed rule is
an equitable determination," based on doctrines of federal
comity. See Nutrition & Fitness, 264 F. Supp. 2d at 360.
"[C]ourts have recognized three factors to be considered in
determining whether to apply the first-filed rule: 1) the
chronology of the filings, 2) the similarity of the parties
involved, and 3) the similarity of the issues at stake." Id. at
360.

Even where the first-filed rule is applicable, a court may
prioritize the second-filed suit if the "balance of convenience"
favors the second-filed suit or "special circumstances" counsel
a departure from the first-filed rule. See Learning Network,
2001 WL 627618, at *3 (citing Ellicott Mach. Corp. v. Modern
Welding Co., 502 F.2d 178, 180 n.2 (4th Cir. 1974)); Nutrition &
Fitness, 264 F. Supp. 2d at 360. The balance of convenience
factors resembles those considered in connection with motions to
transfer venue pursuant to 28 U.S.C. § 1404(a). See US Airways,
Inc. v. US Airline Pilots Ass'n, No. 3:11-cv-371-RJC-DCK, 2011
WL 3627698, at *1 (W.D.N.C. Aug. 17, 2011). Special
circumstances counseling a departure from the first-filed rule
include "forum shopping, anticipatory filing, or bad faith

filing." <u>Nutrition & Fitness</u>, 264 F. Supp. 2d at 360 (citations omitted).

This court finds that the first-filed rule is applicable here. First, the actions were initiated close in time, as Great West filed this action three days before PCA initiated the Illinois Lawsuit. Second, the parties are sufficiently similar, as only Defendants Wallace and Salem Carriers are additional parties to this action, and the court does not view their addition to be significant. Third, "'the same factual issues' provide the basis for each suit," <u>Family Dollar Stores, Inc. v. Overseas Direct Imp. Co.</u>, Civil Action No. 3:10-cv-278, 2011 WL 148264, at *2 (W.D.N.C. Jan. 18, 2011) (quoting <u>Allied-Gen. Nuclear Servs. v. Commonwealth Edison Co.</u>, 675 F.2d 610, 611 n.1 (4th Cir. 1982)), as both this action and the Illinois Lawsuit seek a determination of Great West's obligation to provide for PCA's defense in the Underlying Lawsuit. PCA's Illinois Lawsuit does allege additional claims for relief than Great West's lawsuit here, including breach of contract and extra-contractual relief. (<u>See</u> Ex. A to Marrinson Decl. (Doc. 12) at 18.) In addition, PCA argues that its asserted bad-faith claim under an Illinois statute in the Illinois Lawsuit is the crux of the dispute between the parties, arguing that Great West acted in bad faith by initially denying PCA coverage in the Underlying

Lawsuit. (Def.'s Br. (Doc. 11) at 7.) At this stage, however, the court does not view PCA's bad faith claim as a central dispute; rather, PCA's bad-faith claim appears to be contingent on PCA establishing that Great West breached the Insurance Policy (to which PCA is not a party) or PCA otherwise obtaining a declaratory judgment that Great West is obligated to defend and indemnify PCA in the Underlying Lawsuit. Further, if need be, PCA can (and indeed, might be required to) assert its bad-faith claim as a compulsory counterclaim in Great West's action here. See SAS Inst., Inc. v. Practicingsmarter, Inc., 353 F. Supp. 2d 614, 618-19 (M.D.N.C. 2005); see also Fed. R. Civ. P. 13(a).[2] The cases might not be "mirror images," but they are substantially similar for purposes of the first-filed rule. Cf. US Airways, 2011 WL 3627698, at *2.

The court turns to whether any special circumstances exist that cause the court to not apply the first-filed rule and

---

[2] PCA's complaint in the Illinois Lawsuit, (Ex. A to Marrinson Decl. (Doc. 12) at 24), includes a claim for penalties under 215 ILCS § 5/155, which provides for attorney fees and fines for "vexatious and unreasonable" behavior in insurance liability cases. Parties can counterclaim for damages under this statute. See, e.g., Lexington Ins. Co. v. Horace Mann Ins. Co., 861 F.3d 661, 669 n.6 (7th Cir. 2017); Cincinnati Ins. Co. v. H.D. Smith Wholesale Drug Co., 410 F. Supp. 3d 920, 937-38 (C.D. Ill. 2019), appeal docketed, No. 20-1020 (7th Cir. Jan. 3, 2020); Nat'l Cas. Co. v. S. Shore Iron Works, Inc., 341 F. Supp. 3d 884, 887 (N.D. Ill. 2018).

dismiss, stay, or transfer Great West's action. <u>See</u> <u>Nutrition &</u>
<u>Fitness</u>, 264 F. Supp. 2d at 360.[3] PCA argues that Great West's
action is an improper anticipatory filing. (Def.'s Br. (Doc. 11)
at 6-8.)

The Fourth Circuit has long held that courts should decline
jurisdiction over a first-filed declaratory judgment action
where a party races to the courthouse seeking to head off "the
trial of an issue in a court of coordinate jurisdiction." <u>Aetna</u>
<u>Cas. & Sur. Co. v. Quarles</u>, 92 F.2d 321, 324 (4th Cir. 1937);
<u>see also</u> <u>Samsung Elecs. Co. v. Rambus, Inc.</u>, 386 F. Supp. 2d
708, 724 (E.D. Va. 2005) ("When the circumstances suggest a race
to the courthouse, the first-to-file rule loses much of its
force.").

---

[3] This court does not find that the eleven factors courts
sometimes apply when considering the balance of convenience
between two lawsuits weighs significantly in either party's
favor. (<u>See</u> Def.'s Br. (Doc. 11) at 8-11.) On one hand, neither
party is a resident of North Carolina, and PCA is a resident of
Illinois. In addition, the PCA Transportation Agreement, which
ultimately will need to be interpreted to determine the
obligations of Salem Carriers and Great West, is governed by
Illinois law and PCA asserts a bad-faith claim under an Illinois
statute in the Illinois Lawsuit. On the other hand, Defendants
Wallace and Salem Carriers are North Carolina parties, the
accident giving rise to all of the lawsuits was in North
Carolina, and the Underlying Lawsuit is pending in North
Carolina state court. In addition, Great West and PCA seem to
agree that North Carolina law applies to the interpretation of
the Insurance Policy. (<u>Compare</u> Compl. (Doc. 1) ¶ 36, <u>with</u> Def.'s
Br. (Doc. 11) at 10-11.)

Courts have identified two "red flags" – both of which exist here – suggesting an improper anticipatory filing: when the first-filed action seeks declaratory judgment and when the first-filing party knows of an imminent lawsuit by the second-filing party. See Family Dollar Stores, 2011 WL 148264, at *3-4 (quoting Nw. Airlines, Inc. v. Am. Airlines, Inc., 989 F.2d 1002, 1007 (8th Cir. 1993)). Great West's action is one for declaratory relief, and Great West was aware of potentially forthcoming litigation by means of letter dated December 12, 2018, from PCA's counsel, to which counsel attached a draft third-party complaint against Salem Carriers. (Ex. A to Marrinson Decl. (Doc. 12) at 5-17.) PCA asked Great West to respond to its letter by December 21, 2018, the same day Great West filed this action. (Id. at 9.) Such circumstances strongly suggest an improper anticipatory filing by Great West, seeking to deprive PCA of its preferred forum.

Great West argues that PCA's threatened litigation was contingent on Great West not reversing its coverage determination. (Pl.'s Brief in Opp'n to Def.'s Motion to Dismiss or Stay ("Pl.'s Resp.") (Doc. 16) at 8.) Great West reversed its coverage decision by December 21, 2018, thereby satisfying the condition upon which PCA threatened litigation, and then Great West filed its own action. (See id.)

Even if the court construes Great West's action as an improper anticipatory filing, it would still apply the first-filed rule here. That is because any special circumstance weighing in favor of not applying the first-filed rule is counterbalanced by judicial comity, causing this court to weigh heavily the district court in Illinois's decision to stay the case before it. See Jefferson Pilot Life Ins. Co. v. Griffin, No. 1:07CV0096, 2008 WL 2485598, at *4 (M.D.N.C. June 16, 2008) ("In light of the Arizona court's deference, this Court cannot agree that entering a stay or transferring the case back to the Arizona court would serve the purposes of judicial economy and effective disposition of disputes underlying the first-filed rule."); cf. Walker Grp., Inc. v. First Layer Commc'ns, Inc., 333 F. Supp. 2d 456, 459 (M.D.N.C. 2004) (discussing Carbide & Carbon Chems. Corp. v. U.S. Indus. Chems., Inc., 140 F.2d 47, 50 (4th Cir. 1944)) (noting that rules of comity "require that certain weight should be given to the decision of another United States District Court"). Indeed, the district court's staying of the Illinois Lawsuit drastically undercuts PCA's primary argument here that this court should stay this proceeding in favor of the Illinois Lawsuit.

This court finds that PCA's motion should be denied because, under the circumstances present here, the Illinois Lawsuit is not entitled to priority over this action.

**B.     Ripeness & Standing**

Having determined that the court will not stay the case in favor of the Illinois Lawsuit, the court still must determine whether the court has the power to grant declaratory relief regarding the obligations of Great West and Salem Carriers relating to the Transportation Agreement and the Insurance Policy.

"The Federal Declaratory Judgment Act gives a federal district court the power, in any 'case of actual controversy within its jurisdiction,' to 'declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 375 (4th Cir. 1994), overruled on other grounds by Wilton v. Seven Falls Co., 515 U.S. 277 (1995) (quoting 28 U.S.C. § 2201). Two of the "case or controversy" doctrines are relevant here: ripeness regarding the Insurance Policy and the Transportation Agreement and standing with respect to the Transportation Agreement.

### 1. **Ripeness**

PCA argues that Great West's declaratory action as to non-indemnification based on exclusions in the Insurance Policy and the Transportation Agreement is not ripe. (Def.'s Br. (Doc. 11) at 12-14.) PCA cites nonbinding authority for the general proposition that, under North Carolina law, a court may determine an insurer's duty to defend, but not its duty to indemnify, prior to the resolution of an underlying lawsuit in which coverage is or is not being provided. (Id.) Great West responds that the applicability of the Insurance Policy's exclusions are legal questions not requiring any factual determinations in the Underlying Lawsuit and thus are appropriately before this court now. (See Pl.'s Resp. (Doc. 16) at 10-11.)

"A claim is not ripe for adjudication if it rests upon contingent future events that . . . may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (citations and internal quotation marks omitted). When evaluating the ripeness of a claim, courts look at "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003). "The fitness considerations ask whether the issues are purely legal or

require further factual development for resolution, while the hardship inquiry addresses the difficulty the parties will face if the court does not weigh in." Landmark Am. Ins. Co. v. Rural Cmty. Hosps. of Am., LLC, No. 5:15-CV-390-BO, 2015 WL 12860287, at *1 (E.D.N.C. Dec. 22, 2015) (internal citations omitted) (citing Nat'l Park Hosp. Ass'n, 538 U.S. at 813, and Toilet Goods Ass'n v. Gardner, 387 U.S. 158, 162 (1967)).

Great West seeks a declaration from this court as to both its duty to defend and its duty to indemnify PCA in the Underlying Lawsuit. (Compl. (Doc. 1) ¶¶ 1, 57-61.) The Insurance Policy does not contain a choice of law provision. PCA and Great West, however, seem to agree that North Carolina law governs the Insurance Policy.[4] (Compare Compl. (Doc. 1) ¶ 36, with Def.'s Br. (Doc. 11) at 10-11.) The Transportation Agreement is governed by Illinois law. (Compare Compl. (Doc. 1) ¶ 29, with Def.'s Br. (Doc. 11) at 2.)

---

[4] The Insurance Policy itself also references North Carolina law several times: "The Limit of Insurance applies except that we will apply the limit shown in the Declarations to first provide the separate limits required by North Carolina law . . . .," (Compl., Ex. D (Doc. 1-4) at 43); "This condition does not apply for coverage up to the minimum limits of liability required by the North Carolina Financial Responsibility Act of 1957," (id. at 49); and the Insurance Policy also contains a section entitled "North Carolina Common Policy Conditions," (id. at 109).

Under both North Carolina and Illinois law, the duty to defend is a question of law, which this court can decide prior to the resolution of the Underlying Lawsuit. See <u>Keystone Consol. Indus., Inc. v. Emp'rs Ins. Co. of Wausau</u>, 456 F.3d 758, 761–62 (7th Cir. 2006) (Illinois); <u>Landmark Am. Ins. Co.</u>, 2015 WL 12860287, at *2 (citations omitted) (North Carolina); <u>see also</u> <u>Medline Indus., Inc. v. Ram Med., Inc.</u>, 892 F. Supp. 2d 957, 964–65 (N.D. Ill. 2012) ("[A] claim for breach of duty to defend is ripe during the pendency of the underlying suit."). Further, Great West is currently covering PCA's defense (with help from Salem Carriers until it meets its deductible) in the Underlying Lawsuit subject to a reservation of rights. Such financial harm will continue until a court decides whether Great West is obligated to do so. Great West's declaratory action as to its duty to defend under both contracts is therefore ripe. See <u>Landmark Am. Ins. Co.</u>, 2015 WL 12860287, at *2.

Great West's action as to the duty to indemnify is a closer call. PCA is correct that some courts have said that a duty to indemnify is generally resolved after the underlying lawsuit. See, e.g., <u>Trustgard Ins. Co. v. Collins</u>, 942 F.3d 195, 200 (4th Cir. 2019) ("Thus, suits about the duty to indemnify — unlike the duty-to-defend suits — would ordinarily be advisory when the insured's liability remains undetermined."); <u>Montgomery Mut.</u>

Ins. Co. v. Citadel Mgmt., LLC, No. 3:12-CV-00797-FDW, 2013 WL 6147778, at *6 (W.D.N.C. Nov. 22, 2013) (citing Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C., 364 N.C. 1, 7, 692 S.E.2d 605, 611 (2010)) ("While an insurer's duty to defend may be determined upon commencement of the underlying action, its duty to indemnify cannot be determined until the conclusion of the case if necessary facts remain in dispute."). And courts have ruled early in cases differently on the defense and indemnification questions in the same opinion. See Landmark Am. Ins. Co., 2015 WL 12860287, at *2; Medline Indus., Inc., 892 F. Supp. 2d at 965-66.

However, the Fourth Circuit has held that, while "an insurer's duty to indemnify will depend on resolution of facts alleged in the complaint, no such factfinding is necessary if there is no duty to defend because the allegations, even when taken as proved, would fall outside the policy's coverage." Penn-Am. Ins. Co. v. Coffey, 368 F.3d 409, 413 (4th Cir. 2004). In other words, if the court assumes all of the facts in a complaint are true, and those facts fail to allege a duty to defend, the court may also reach the conclusion that there is no duty to indemnify as well, based upon those facts. But see Westfield Ins. Co. v. Nautilus Ins. Co., 154 F. Supp. 3d 259, 271-72 (M.D.N.C. 2016) ("It is well established that the duty to

defend, though broader than the duty to indemnify, is a distinct duty. While the reasons that may negate an insurer's duty to defend may also negate an insurer's duty to indemnify, the duty to defend does not subsume the duty to indemnify." (internal citations omitted)).

Nonetheless, for the purposes of the instant motion, North Carolina law dictates that an insurer's duty to indemnify cannot be determined until the conclusion of the case, if necessary facts remain in dispute. Harleysville Mut. Ins. Co., 364 N.C. at 7, 692 S.E.2d at 611. The underlying tort case, in which Defendant Wallace alleges PCA was negligent, is still pending. (See Def.'s Reply (Doc. 18) at 8.) The court will dismiss Great West's duty-to-indemnify claim without prejudice; Great West may file a new declaratory judgment action in the event the ultimate factual findings in the underlying litigation suggest coverage is appropriate. See Peerless Ins. Co. v. Innovative Textiles, Inc., No. 1-19-CV-362, 2020 WL 137303, at *2–3 (M.D.N.C. Jan. 13, 2020) (dismissing a duty to indemnify claim because the case "could consume judicial resources to produce a decision that may be merely advisory," among other reasons); Fed. Ins. Co. v. S. Lithoplate, Inc., 7 F. Supp. 3d 579, 589–90 (E.D.N.C. 2014) ("[R]ather than allowing this case to remain open pending further factual development in the West Virginia state court

actions, the more efficient use of judicial resources is to dismiss Southern Lithoplate's duty to indemnify claims as unripe at the present time.").

Having determined that the duty-to-defend issue is ripe, and the duty-to-indemnify issue requires resolution of disputed facts before the matter is ripe, the court still must determine whether Great West has standing to seek declaratory relief regarding the Transportation Agreement.

## 2. **Standing**

PCA argues that Great West lacks standing to seek declaratory relief as to the application and enforceability of the indemnification clause in the Transportation Agreement, because it is neither a party to, nor an intended beneficiary of, that agreement. (Def.'s Br. (Doc. 11) at 13-15.) In response, Great West argues that "whether Great West owes PCA a duty to defend and a duty to indemnify PCA under the Great West Policy, requires interpretation of the Transportation Agreement," which gives Great West "a definite and substantial interest in requesting the Court to interpret the Transportation Agreement as part of its overall interpretation of coverage here." (Pl.'s Resp. (Doc. 16) at 12.) PCA's argument as to Great West's standing is without merit.

Federal district courts exercise limited jurisdiction. _Exxon Mobil Corp. v. Allapattah Servs., Inc._, 545 U.S. 546, 552 (2005). For a case or controversy to be justiciable in federal court, a plaintiff must allege "such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." _White Tail Park, Inc. v. Stroube_, 413 F.3d 451, 458 (4th Cir. 2005) (quoting _Planned Parenthood of S.C. v. Rose_, 361 F.3d 786, 789 (4th Cir. 2004)). The judicial doctrine of standing is "an integral component of the case or controversy requirement." _CGM, LLC_, 664 F.3d at 52 (citation and internal quotation marks omitted). The party seeking to invoke the federal courts' jurisdiction has the burden of satisfying Article III's standing requirement. _Miller v. Brown_, 462 F.3d 312, 316 (4th Cir. 2006). To meet that burden, a plaintiff must demonstrate three elements: (1) that she has suffered an injury in fact that is "concrete and particularized" and "actual or imminent"; (2) that the injury is fairly traceable to the challenged conduct; and (3) that a favorable decision is likely to redress the injury. _Lujan v. Defenders of Wildlife_, 504 U.S. 555, 560-61 (1992).

Great West has standing to seek declaratory relief to clarify its coverage obligations of PCA in the Underlying

Lawsuit. While Great West is not a party to the Transportation Agreement, one (and possibly two) of its insured are, and Great West's financial interest in the Underlying Lawsuit is apparent because of its potential duties to defend and/or indemnify. These contested duties give rise to an "actual controversy." See Nautilus Ins. Co., 15 F.3d at 375 n.3 ("A dispute between a liability insurer, its insured, and a third party with a tort claim against the insured over the extent of the insurer's responsibility for that claim is an 'actual controversy' . . . ."). Indeed, courts regularly adjudicate declaratory judgment actions whereby an insurer seeks to clarify its coverage obligations in a lawsuit to which it is not a party. See, e.g., Montgomery Mut. Ins. Co., 2013 WL 6147778, at *1.

The Southern District of West Virginia dealt with a similar factual situation in Steadfast Insurance Co. v. Berkley National Insurance Co., 217 F. Supp. 3d 904 (S.D.W. Va. 2016). That case dealt with two companies, HG and Stric-Lan, which entered into a service agreement. Id. at 908. That agreement required Stric-Lan to name HG as an "additional insured" on its insurance. Id. Stric-Lan obtained an insurance policy from Berkley, which included HG as a "Blanket Additional Insured as Required by Written Contract." Id. at 908-09. One of Stric-Lan's employees, who was hired to work at an HG well site, was injured on the job

and sued both companies. Id. HG sought defense coverage from
Stric-Lan and Berkley. Id. Both entities refused to defend or
indemnify HG. Id. As a result, HG's other insurers, Arch and
Steadfast, paid for HG's defense and litigation settlement. Id.
Arch and Steadfast sued Berkley, seeking a declaratory judgment
regarding Berkley's obligations under the Stric-Lan/Berkley
insurance policy to provide coverage to HG. Id. at 907–08. The
court found that "[a]lthough [the plaintiffs'] case focuses on
the interpretation of a contract to which they are not a party,
the interpretation of that contract is an essential part of
establishing the legal relationship between the plaintiffs and
defendants." Id. at 911.

The same is true here. Great West is not seeking to enforce
the Transportation Agreement; interpreting the Transportation
Agreement is instead "an essential part of establishing the
legal relationship between the plaintiff[] and defendants," that
is, whether Great West is contractually obligated to defend and
indemnify PCA by virtue of insuring Salem Carriers, which is a
party to the Transportation Agreement and which agreed to
"indemnify, defend and hold harmless PCA under certain, limited
circumstances," (Pl.'s Resp. (Doc. 16) at 12).

PCA nevertheless maintains that Great West lacks standing
to seek declaratory relief regarding the Transportation

Agreement. (Def.'s Br. (Doc. 11) at 13–14.) PCA relies primarily on two cases in support of its argument here: Mortgage Payment Protection, Inc. v. Genworth Mortgage Insurance Corporation, No. 5:11-CV-00075-D, 2012 WL 569906 (E.D.N.C. Jan. 20, 2012), report and recommendation adopted, No. 5:11-CV-75-D, 2012 WL 569895 (E.D.N.C. Feb. 22, 2012), and Burke v. City of Charleston, 139 F.3d 401 (4th Cir. 1998).

In Mortgage Payment Protection, the court dismissed the plaintiff's breach of contract claim based on a contract to which it was not a party. The plaintiff's amended complaint in that case, however, did not seek declaratory relief, but rather alleged three contractual claims, which this court finds significant. 2012 WL 569906, at *7. The plaintiff sought to enforce a contract to which it was not a party; the plaintiff was not seeking a court's interpretation of an ancillary contract that directly affects, and indeed is essential to the determination of the plaintiff's legal rights, as is the case here. See also Steadfast Ins. Co., 217 F. Supp. 3d at 910–11 (finding standing for an insurance company who, although not a party to the underlying contract, was "intimately intertwined with the priority of all parties' coverage obligations").

In Burke, the Fourth Circuit dealt with an artist whose mural on a building was ordered removed by the city's board of

architectural review. 139 F.3d at 403–04. The building's owner filed an application with the board for a permit, which the board denied. Id. at 403–04. The building's owner did not bring suit; instead the artist brought suit, alleging the denial of the permit to the building owner violated the artist's free speech. Id. The court held that the plaintiff lacked standing because it was the building owner's right to display the work that was at issue, not the plaintiff's unrelated right to create the work. Id. at 405–06. The court found that the rights of the plaintiff and the rights of the building owner were completely separate: "[the plaintiff] relinquished his First Amendment rights embodied in the mural when he effectively sold it to [the building owner]." Id. at 406. Thus, the plaintiff could not assert a claim based on the unrelated interests of a third party. Id. at 406.

Critically, Great West is not bringing a contractual claim nor is its claim for relief independent of Salem Carriers' rights under the Transportation Agreement. Instead, as discussed supra, Great West's rights are dependent on an interpretation of the Transportation Agreement. (Pl.'s Resp. (Doc. 16) at 12.) Great West's rights are therefore not separate from Salem Carriers under the Transportation Agreement, and Great West is

not asserting a claim based on the "unrelated interests of a third party."

In sum, on the ripeness and standing issues with respect to the Insurance Policy and the Transportation Agreement, the Fourth Circuit's language in Nautilus Insurance Co. is applicable and persuasive:

> A dispute between a liability insurer, its insured, and a third party with a tort claim against the insured over the extent of the insurer's responsibility for that claim is an "actual controversy" within the meaning of the federal Declaratory Judgment Act, even though the tort claimant has not yet reduced his claim against the insured to judgment.

15 F.3d at 375 n.3 (citing Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270 (1941)); see also Penn Am. Ins. Co. v. Valade, 28 F. App'x 253, 257 (4th Cir. 2002) ("When an insurer initiates a declaratory judgment action against both an injured third party and its insured, the injured third party acquires standing — independent of that of the insured — to defend itself in the declaratory judgment proceeding."). The absence of one of the insureds in this dispute does not change the quoted analysis. The court therefore finds that Great West has standing to bring the present suit with regard to the Transportation Agreement.

C.  **The Underlying Lawsuit**

There is one more matter to address, which the parties have not. PCA attached to its December 12, 2018 letter to Great West a draft third-party complaint against Salem Carriers in the Underlying Lawsuit. (See Ex. A to Marrinson Decl. (Doc. 12) at 11-17.) PCA's draft third-party complaint sought the contractual indemnity PCA claims it is owed by Salem Carriers in connection with its defense of the Underlying Lawsuit, (id. at 14), and which presumably could have obviated in part the need for Great West's action here. Nevertheless, it appears that PCA neither filed that third-party complaint nor has it otherwise raised the issue to the North Carolina Superior Court of Salem Carriers' (and derivatively, Great West's) defense and indemnity obligations in the Underlying Lawsuit. The court could, in its discretion, stay or dismiss this action because it seeks to resolve issues that the state court could, and ultimately might, decide.

"To aid district courts in balancing the state and federal interests when a parallel state action is pending," the Fourth Circuit has outlined four factors for district courts to consider when determining whether to exercise jurisdiction:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently

> than the federal courts; (3) whether the presence of
> "overlapping issues of fact or law" might create
> unnecessary "entanglement" between the state and
> federal courts; and (4) whether the federal action is
> mere "procedural fencing," in the sense that the
> action is merely the product of forum-shopping.

United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493–94 (4th

Cir. 1998) (citing Nautilus Ins. Co., 15 F.3d at 377). None of

these factors weigh in favor of staying or dismissing this

action in favor of the Underlying Lawsuit. Given that neither

Great West nor Salem Carriers appears to be a party to the

Underlying Lawsuit, see Quarles, 92 F.2d at 325, such a decision

by this court would be premature. Further, it is not clear to

this court that either Great West or Salem Carriers could

intervene in the Underlying Lawsuit. State Farm Fire & Cas. Co.

v. Garrity, 785 F.2d 1225, 1227 (4th Cir. 1986) (citing

Strickland v. Hughes, 273 N.C. 481, 489, 160 S.E.2d 313, 319

(1968)) (discussing an insurer's inability to become a party to

a state action to assert an intentional injury argument). Great

West's best opportunity to advance its coverage position

therefore lies here in this federal declaratory judgment action.

See Garrity, 785 F.2d at 1227.

IV.  **CONCLUSION**

This court finds it an appropriate use of its discretion to exercise jurisdiction over Great West's declaratory judgment action under 28 U.S.C. § 2201(a).

**IT IS THEREFORE ORDERED** that Defendant PCA's Motion to Dismiss or Stay Plaintiff's Declaratory Judgment Action, (Doc. 10), is **GRANTED IN PART** and **DENIED IN PART.** The motion is **GRANTED** with respect to Plaintiff's action for whether there is a duty to indemnify under either the Insurance Policy and the Transportation Agreement and **DISMISSED WITHOUT PREJUDICE.** The motion is **DENIED** with respect to Plaintiff's remaining claims. Pursuant to Fed. R. Civ. P. 54(b), the court will reserve entering a final judgment until all claims have been resolved.

This the 13th day of March, 2020.


_____
United States District Judge